The next case for argument is 22-1569, Bot M8 v. Sony Interactive. Mr. Andre, whenever you're ready. Thank you, Your Honor. May it please the Court? There are three fundamental aspects of the inventions claimed in the 988 and 670 patents. The first is that the fault inspection program is distinct and different than the boot program. The second is the sequence of operations. The patent talks about how important it is to get the sequence done correctly. The boot program operates first. When it's done, the fault inspection program operates to check up the faults. And when it's completed, the game application can run. And third, the fault inspection program inspects both the hardware and the software. It's not enough to just do one or the other. It has to do both. Okay, so let me ask you about the first and second. Those are the two issues, right? Yeah. Okay, first issue, it seemed like everyone agreed that the fault inspection program and the claimed boot program have to be separate in the prior art. That's my understanding. And that the Board found that under that view, the piece of prior art, whose name I can't pronounce, Sugiyama, disclosed a boot program separate from a fault inspection program, right? What the Board found was, you know, we argued that it was not separate, that the boot... Yes, but it found they were separate. So I just want to establish first that we're dealing with a substantial evidence question of the Board's whether or not the prior art... This is the claim interpretation of fault inspection program. It is something that the fact that the Board said fault inspection program can have the same program like in Sugiyama, the same program. They said it can be the boot program and the fault inspection program. And they say, in the brief, they say, we believe that Sugiyama discloses both, but even if it doesn't, then they can be the same program can satisfy both claim elements. So if the claim interpretation, they expressly rejected the fault inspection program claim interpretation we provided, which was... But tell me, I mean, I guess it's page 71 and 72. Didn't they find that Sugiyama disclosed a boot program separate from a fault inspection program? And aren't you challenging that finding and isn't that a question of substantial evidence? Well, what we're trying to establish first is wrong claim interpretation Well, just answer my question first, then you can put in your stuff. But am I wrong in how I'm construing what the Board did here? Well, the Board, as I just said, found that there is one section of Sugiyama that has the start program. That is the boot program and a fault inspection program, two separate programs. But the data shows that it is a single program. They said it doesn't matter if it's a single program because a single program can satisfy, under their claim interpretation of the fault inspection program, a single program can satisfy both the fault inspection program and the boot program. They're very clear on that. They rejected specifically that they have to be two separate programs. Well, why don't we look at what they said. Are we on 70, appendix 70, am I in the right place? 70. 72. 71, Your Honor. Okay. It says the patent owner argument is predicated on our adoption of his claim construction for the term fault inspection program as other than a boot program, which we declined to adopt. Okay. And then it says petitioner argues S.A.2 and S.A.4 are collectively a fault inspection program, beginning with Step 2. And so they did find that the prior art separate had two different programs, right? No, it was a single program. The S program, there's separate steps in the program that goes S1 down to S, whatever the number was. S2 and 4 were the, where they did the inspection. Well, don't they find on Topic 72, indeed petitioner relies on Step 1 as teaching the claim boot program, Step 2 and subsequent steps as separate from Step 1 and determine whether that abnormality has occurred. They are a fault inspection program. Yeah, but it's predicated on the construction that a single program can be, have satisfied both elements, the boot program and the fault inspection program. If you predicate a single program on that and you do the separate steps, Step 1, S1, S2, and S4, even if that is a single program, a single program can't satisfy the claim interpretation of the fault inspection program. So if you start off with improper claim construction and say that even though they're separate, they were very, very clear that the PTAP said, even though we recognize they're two separate programs. So, Counselor, you would agree that the board found that different steps can meet the different functionalities of fault inspection program and boot program, right? That's what the board found. But it's a step of a single program. And so the basis, if you start with an improper claim construction of the fault inspection program... Well, let me state it a different way. Is your real complaint that separate steps, which appear in the prior art, cannot be separate programs? Is that what the fault line is? It is something that the separate steps are not separate programs, as defined in the prior art, but how the board interpreted the fault inspection program as being something that could be, that and the boot program could be the same thing in the same program. So the dispute is whether or not separate steps can constitute separate programs. Yeah, I mean, I think that that's an issue that is not really... Every program has multiple steps in it. I mean, there's not a single program that has a single step. And so what we... So, Counsel, why does listing those sort of program functionalities separately mean they must be in different programs? Well, that goes back to the claim structure argument, Your Honor. If you have two separate terms in the claims, which is what they do, and there's a reason they have the two separate programs, so that they'll run in a sequential manner. And so, like, the boot program has to be completed before you get into the fault inspection program. Here it is not. It's commingled into a single program. They call it the S-1 through... I mean, you can run things sequentially even within the same program, though. You don't have to have separate programs to have that sequential... It's possible. Right. Yeah. The point is, if you're coming from a basis that a single program, like in Tsujiyama, can satisfy both the fault inspection program and the boot program, two separate claim elements, that's what they did. They said there's just separate steps within the same program. You didn't carve out the two different programs as claimed there. Now, this was contrary to the law to start off with. This Court has ruled many times, two separate claim terms, you have two separate. Well, the law that you're referring to, though, are those typically cases involving more so mechanical-type inventions, where it would be, like, physical components that would be distinct as opposed to a software-based invention? Yeah, I mean, the Beckman-Dixon case, I think, is more of a mechanically inclined... I think that's correct. And I think that is something that, you know, maybe it's more difficult to visualize something that is in ether as software. But still, programs are very distinct. They have a start and have a stop. And so the fact we have two separate programs, and this is much related to the authentication path, as we talked about earlier today, this is important for security. That's the whole idea of having these things done in a sequential nature. Do you have a case law you can point me to that is more so focused on, like, a software-based invention where there needs to be this distinction as opposed to the cases, like you mentioned, like Beckton, that would be more of a mechanical case? I think maybe the Comcast case. I think that would be more relevant to what we're talking about. Is that cited in your brief? It is. And also, you know, this also goes back to the prosecution history. The prosecution history was very clear that we overcame prior art by saying they had to be two separate and distinct programs because we said the prior art tried to come in and go into a single program. And we said what we have here is something that is, the prior art was Bizarria, and it's appendix 1580 through 88. And during the prosecution history, we made it very clear that it's not enough to have a single program that has multiple steps that does the same function. Here we have two separate, distinct programs. And it's important for the security reason to boot up the program A, then run the fault inspection before the game program begins. So PTAB got there by giving also an improper claim instruction for the boot program. They gave a very, very broad boot program. They didn't give it the normal, ordinary meaning. They said it's just a small program in search of a big program. The boot program, as we all know, is a program that starts at the computer. We all know what that is, boot up the computer. I mean, this is the common parlance. We provide dictionary definitions as extrinsic evidence. Even the one Stoney cited talked about it had to start at the computer. The fact they gave such a broad interpretation to the boot program shows that they kind of commingled the boot program with the fault inspection program. They gave it no real meaning. They say anything that starts, anything that begins is a boot program. That's not what a boot program is. It's not according to dictionary definitions, not according to one skill in the art, and not according to the patent itself. All right, can I turn you, before your time runs out, I know your second issue was the hardware software. Yeah, the hardware software is something, once again, in order to overcome prior art, I believe this was the Yamaguchi reference, Yamamoto reference, I'm sorry. We also had to say that our fault inspection inspects both the hardware and the software. Okay, I'm a little confused by this issue, and I guess it's because of the two patents that are in play here, the 988 and the 670. I mean, for the 988, I understand that the board concluded that Tsujiyama and Morrow each disclosed the fault inspection program that does both, right? They found both, yes. Yes, so even if we were to accept your construction, why would the ultimate result from the 670 be any different? Well, the 670, the argument that had to be both hardware and software does not apply to the 670 because the claim language is different. It's not explicit in the claim language like it is in the parent application. So the only thing I would say about that is that when the board used the improper claim interpretation, it said it could be in the conjunctive, it could be or, not and. Once again, they're using an improper claim interpretation of the fault inspection program. Yeah, but even if we were to construe the 670 that way, you've got the pieces of prior art that the board has already concluded do both, so where does it get you? Do you understand my question? Yeah, I understand. What I'd say that is is that when it comes to the board's finding, at that point, if they use a proper claim construction, then I don't think they get to the ultimate conclusion. They found that the Tsujiyama reference talks all about hardware, hardware, hardware. They said, but that makes a passing reference to also could do a program on the hardware. So in order for you to prevail on this issue, we would have to look back at the findings of the 988 and conclude there was no substantial evidence to support the board's conclusion that they disclosed a program that does both. That's great. Thank you. Thank you. May I please report? On the first issue, the board already agreed with the appellant here that the boot program and the fault inspection program should be treated as separate. In the final written decision of the 988. Yeah, I know. So the real issue is whether or not these pieces of prior art really separate them, and the board concluded they did, and they're arguing they didn't. Yes, I think that's right, Your Honor. So there is substantial evidence that supports that finding, too. I'd alert the court to a couple different portions of the record. First, Tsujiyama itself, in Figure 5, illustrates these as separate blocks in a flow chart. So there is a difference. We had this discussion 10 minutes ago on the case. Why isn't that, just to what we labeled this, why isn't that a claim construction question versus a substantial evidence question? You could treat it as a claim construction question, Your Honor. Was it properly presented? Was it presented to the board as a claim construction question? Yes, I think it was, Your Honor. But the board agreed with the appellant already. So, yes, it was presented as a claim construction question below that the boot program and the fault inspection program need to be treated as separate, and the board expressly said in Appendix F57 that they agree with the patent owner that these do indeed need to be treated as separate. So we all agree they have to be separate, but then applying that claim construction to the prior art, the dispute arises as to whether this is separate. I think so, Your Honor. There's one other wrinkle here, Your Honor. On appeal, they've suggested that separate is not enough, and that instead you need to introduce this language that it's something other than the boot program and the fault inspection program need to be something other than one another. Is it separate functionality or separate programs? I just want to make sure I'm tracking your argument. Sure. So our argument is, Your Honor, that they are separate programs with separate functionality. And that the... You're talking about the prior art now, what they do. Yes, and the claim construction can be the boot program is a separate program than the fault inspection program. And the board below found that Sugiyama teaches exactly that. In fact, there's one portion of Sugiyama that says expressly that programs other than the startup program described above, this is appendix 1007, it's Sugiyama at paragraph 11. So the prior art reference itself treats these things as separate and refers to them as separate programs. There's also expert testimony on this. Dr. Wolf evaluated the Sugiyama teachings and the software discussed there and offered an opinion that these should, in fact, be treated as separate programs, the boot program and the fault inspection program as taught by Sugiyama. And the board relied on that evidence and concluded that they are separate programs in Sugiyama and so that Sugiyama teaches both a boot program and a fault inspection program as required by the claims. And I meant to briefly talk about these hardware software things. Of course, Your Honor, and I think you put your finger on the issue. There's two different patents in this appeal. The 670 patent, claim 1, involves inspecting hardware. Claim 4 involves inspecting software. And then in the 988 patent, Your Honor, the fault inspection program as defined there involves inspecting both hardware and software. Now, there's a definitional statement in both of the patents as to what the fault inspection is. And then the claims go into further detail about what the fault inspection program does. And they're different. So in the 670 patent, one is directed to hardware, one is directed to software. And then in the 988 patent, it's recited in the claim expressly, the default inspection program does inspect both hardware and software. And you're looking at the surrounding claim language to be able to know that, correct? Exactly, Your Honor. That's exactly right. And so taking that 988 analysis, the board already found that the prior art teaches both inspection of hardware and software. There was expert testimony that supported those findings, and the board concluded in light of all the evidence, both as to the Sugiyama combination and also as to the separate independent Morrow combination, that each of these combinations taught inspecting both hardware and software. And the final issue is boot program. And the board correctly construed boot program. The board's construction was informed by a computer dictionary. The board also considered expert testimony about boot programs. And expert testimony below, both experts were in agreement that extended BIOS is not necessarily part of every computer. And so the competing constructions here, the board construed boot program to mean a small startup program that enables the computer to load larger programs. And the competing construction offered by appellant is narrower. And it says a boot program is, quote, a program that initialized various devices, including the extended BIOS and the operating system. Okay, let me ask you just a threshold question. Yes. If we were to agree with you on the first two issues we discussed this morning, do we need to reach the proper construction of boot program? And is that separate and distinct from the discussion we had on Issue 1 on boot program versus fault inspection? No, you would not need to reach this question, Your Honor. And the reason is Sugiyama already teaches. There's already an obviousness ground based on Sugiyama. And so this separate boot program definition issue only relates to the secondary ground based on prior reference Morrow. So you would not need to reach this question if you agree with us on the first two points, Your Honor. Keep going. I didn't mean to interrupt you. Not at all. So the issue here, their construction is narrower than ours. Their construction requires initializing an extended BIOS and also initializing an operating system. One problem with that is that both experts agreed, and their expert agreed in his deposition, that not all computers have an extended BIOS. So there's nothing in the patents that say that these claims need to be limited to computers that have an extended BIOS. There's just one example, one embodiment, where the embodiment discusses using an extended BIOS. But there's nothing else in the patent that says it needs to be so limited. And that's what the Board found. The Board looked at all the evidence, looked at several dictionary definitions, noted that many of the dictionary definitions in the record did not require initializing even an operating system, and concluded that the correct construction was from a dictionary definition that explained the history of boot-up and bootstrap. The notion is to bootstrap a computer by loading a small startup program that then allows the computer to load larger programs. And so based on that definition, the Board evaluated the Morrow combination, and the Morrow found that the Board found that Morrow does teach a boot program based on this definition. Morrow teaches a file allocation reader, and that file allocation reader is initiated right when the computer first boots up, and then that's used to start a verification process that takes place in Morrow. And the Board found, based on their definition, which was rooted in a dictionary definition, that Morrow does teach a boot program. Unless there are further questions, I'll conclude. Thank you. Thank you. Just a couple of issues premised on the incorrect claim construction of a fault inspection program and boot program. The Board was very clear in its construction that it was not going to give the construction of a fault inspection program precluded from also including a boot program. It's treated as separate elements. On page 10 of the appendix, it says, we see nothing in the record that precludes the fault inspection program from also being a boot program. So by its very nature, that's on the second line down. So under that premise, the Board then went in and looked at Tsujiyama. And with Tsujiyama, on page 21 of the appendix, it says that the petitioner argues that the steps, S2 and S4, are collectively a fault inspection program. We are not persuaded that steps two and four are limited to being part of the startup program. And even if we were persuaded at that point, we disagree that the startup program cannot include fault inspection independent of HED inspection program two. That is, if you start with the wrong premise, the wrong claim construction, which the Board did here by saying fault inspection protein can't also include boot program. One program can include both of them. And then you apply that to the art. You start the fundamental building blocks of improper claim construction and then argue the art under that improper claim construction. So that would be our argument as to why this is a claim construction issue at first. If the claim construction is wrong for fault inspection program and boot program, then the findings of fact based on the incorrect construction have to be set aside. Thank you, Your Honor. Appreciate it. We thank both sides and the case is submitted.